UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TERRY PETER AUTHEMENT, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-4618** |
| **PARISH OF TERREBONNE, STATE OF LOUISIANA, SHERIFF OF TERREBONNE PARISH, TPCJC, MEDICAL DEPARTMENT IN TPCJC, CPRL. MATTHEW JACCUZZO, WARDEN LEE ROY LIRETTE JR.** | **SECTION "I" (4)** |

### PARTIAL REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(1)(B) and (C), § 1915(e)(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. On September 14, 2009, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for the Terrebonne Parish defendants participating by conference telephone call.[2] Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure. *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] Rec. Doc. No. 17. The plaintiff was sworn prior to testifying. The hearing was digitally recorded.

## I. Factual Summary

### A. The Complaint

The plaintiff, Terry Peter Authement, Jr. ("Authement"), is a prisoner housed in the Allen Correctional Center in Kinder, Louisiana. Authement filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. §1983 against the Terrebonne Parish Consolidated Government, the State of Louisiana, Terrebonne Parish Sheriff L. Vernon Bourgeois, Jr., the Terrebonne Parish Criminal Justice Complex ("TPCJC"), the TPCJC medical department, Corporal Matthew Jaccuzzo, and Warden LeeRoy Lirette.

Authement alleges that on June 19, 2009, he placed paper over the windows in his cell. He claims that Corporal Matthew Jaccuzzo and another officer entered the dormitory. Jaccuzzo grabbed his shirt and held him against the wall under the stairs. He alleges that the corporal "put his fingers in my ass" while the other officer searched his cell. He claims that he filed a complaint with the medical staff about the incident every night for a week, but he was never examined. He states that on June 30, 2009, he showed bloody tissue to Nurse Monique and an officer named "Big Country," and he was still never checked.

He further alleges that, on June 20, 2009, Corporal Jaccuzzo threatened to kill him if he told anyone what happened. He claims that Jaccuzzo also wrote a disciplinary report against him in retaliation for reporting the incident. Authement claims that he fears for his life.

As relief, he seeks $75 million in damages. He also requests that Jaccuzzo be fired and charges filed against him for sexual assault. He also seeks to have the Warden and the medical staff fired and charged with neglect for failing to have him checked after the sexual assault. He also seeks to have the charges against him dropped and his criminal record expunged.

## B. The *Spears* Hearing

Authement testified that he was a pretrial detainee at the time of the hearing awaiting disposition of charges as a felon in possession of a firearm. He also stated that he was on suicide watch in a lockdown cell at the TPCJC on May 19, 2009. Because of this, he was wearing a padded blue coverall with velcro. He explained that he was in lockdown after he flooded his cell. While there, he was later placed on suicide watch because he wrote a note and placed a noose around his neck. He stated that he has a history of Touret Syndrome, ADD, ADHD, and paranoid schizophrenia. He was first diagnosed with paranoid schizophrenia in 2005 while incarcerated in the Elayn Hunt Correctional Center ("Hunt"). He was not on medication for schizophrenia at the time of the suicide attempt or the underlying incident.

He testified that he had not had medication for his mental disorders for years. At Hunt, he was given Haldol. In 2006 and 2007, he also received Vistral from the doctors at River Correctional Center. Prior to this arrest, he was not seeing a doctor for schizophrenia, although he was in the process of getting appointments set up.

At TPCJC, he did not see Dr. Lowe, a psychiatrist, until after he wrote the suicide note, which was a couple of days after the incident with Deputy Jaccuzzo in June of 2009. He placed him on Thorozine, an anti-pscychotic medication, to calm him down. He saw him one other time in August, when he took Authement off of the Thorozine. Authement stated that he did not like the effects of Thorozine so, after the first few days, he refused to take it anyway. At the time of the hearing, he anticipated another follow-up appointment with Dr. Lowe. He also explained that without medication, he has rare episodes. He complains that he hears things that are not there and sees animals that are not there.

He further testified that, on May 19, 2009, while on suicide watch in lockdown, he was dissatisfied with his ability to get medical attention for his dislocated shoulder. He had a history of his shoulder problems because of damage to his rotator cuff. To get attention, he put paper over the windows. He stated that Deputy Jaccuzzo and one other deputy came to the cell.

Deputy Jaccuzzo pulled him up off his bunk, which caused the velcro on his suit to come open. The velcro scratched his shoulder blade. Jaccuzzo told the other deputy to remove all paper from the cell. In the meantime, Jaccuzzo pulled Authement underneath the stairs and shoved him into the wall. While there, he testified, Jaccuzzo put at least one of his fingers in Authement's anus and then pulled his finger up and then out causing him injury. Jaccuzzo reportedly told him that he would get the same treatment every time he caused trouble.

Authement stated that he bled for a while and that he tried to get medical care. He even showed blood on a tissue to a nurse and another deputy. He wrote a complaint about why he had not been treated for the sexual assault. He recalled that he received a response stating that the medical department did not get involved in criminal allegations and that his medical requests have been honored.

Authement also stated that, the day after he filed a grievance about Deputy Jaccuzzo, he received a disciplinary write up for papering the window and for blocking a security device. He refused to accept the written report because most of the allegations from Jaccuzzo were untrue, for example he failed to mention that there was another deputy present. Authement stated that he entered a plea of guilty to papering over the window, and he was released from lockdown several days later.

He also testified that he sued Warden Lirette because he ran the jail and made decisions on how matters at the jail should operate. He also complained that he failed to assure that the jail ran properly. He further alleged that the Warden failed to investigate his grievance about Jaccuzzo, which was denied, because there was no evidence to further pursue the matter. He stated that about two days after the incident, a detective took his statements, and he heard nothing else about the matter.

He also testified that he sued the Sheriff of Terrebonne Parish because he is responsible for all of the employees at the jail, including the Warden.

## II.    **Standard of Review for Frivolousness**

Title 28 U.S.C. § 1915A and Title 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28.

Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

## III.   Improper Defendants

### A.   State of Louisiana

Authement named the State of Louisiana as a defendant, although he stated no basis for doing so. A claim against the State in this court is barred by the Eleventh Amendment and must be dismissed.

The Eleventh Amendment to the United States Constitution forbids federal courts from entertaining a suit for monetary damages brought by a citizen against his or her own State. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984); *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 185-86 (5th Cir. 1986). An exception to the Eleventh Amendment prohibition exists where the State has expressly waived its sovereign immunity. *See Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (holding that a state's consent to suit against it in federal court must be expressed unequivocally); *Welch v. Dept. of Highways*, 780 F.2d 1268, 1271-73 (5th Cir. 1986). However, the State of Louisiana has not done so in this case. Furthermore, La. Rev. Stat. Ann. § 13:5106(a) provides that "no suit against the state . . . shall be instituted in any court other than a Louisiana state court."

Thus, the plaintiff's claims against the State of Louisiana are barred by the Eleventh Amendment. Because the Eleventh Amendment deprives this Court of jurisdiction over the claims against the State, those claims should be dismissed without prejudice, *see Warnock v. Pecos County,*

*Texas,* 88 F.3d 341, 343 (5th Cir. 1996), because they are frivolous, fail to state a claim for which relief can be granted, and seek relief against an immune defendant pursuant to 28 U.S.C. § 1915, § 1915A, and 42 U.S.C. § 1997e.

### B. The TPCJC and the Medical Department at the TPCJC

Authement also names as defendants the TPCJC and the medical unit at the TPCJC as defendants. These entities are not subject to suit and any claims against these entities are frivolous.

Section 1983 imposes liability on any "person" who violates someone's constitutional rights while acting under color of state law. 42 U.S.C. § 1983 (2006); *see Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989). In accordance with Rule 17(b) of the Federal Rules of Civil Procedure, Louisiana law governs whether these defendants can be sued.[3] Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "an entity to which the law attributes personality, such as a corporation or partnership." La. Civ. Code Ann. art. 24 (2008).

The State of Louisiana, however, grants no such legal status to any Parish Sheriff's Office. *Liberty Mut. Ins. Co. v. Grant Parish Sheriff's Dep't*, 350 So. 2d 236 (La. Ct. App. 1977), *writ refused*, 352 So. 2d 235 (La. 1977). Thus, none of the Parish Sheriff's Offices are legal entities capable of suing or being sued. *Ruggiero v. Litchfield*, 700 F. Supp. 863, 865 (M.D. La. 1988). Accordingly, the Terrebonne Parish Sheriff's Office is not a juridical person capable of being sued under § 1983. The claims, if any, against the TPSO are frivolous and otherwise fail to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e) and § 1915A, and 42 U.S.C. § 1997e.

---

[3]Rule 17(b) of the Federal Rules of Civil Procedure provides that "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." *See* Fed. R. Civ. P. 17(b).

Furthermore, under federal law, a county (or parish) prison facility is not a "person" within the meaning of Rule 17. *Cullen v. DuPage County*, No. 99 C 1296, 1999 WL 1212570, at *1 (N.D. Ill. Dec. 14, 1999); *Whitley v. Westchester County Corr. Facility Admin.*, No. 97 CIV. 0420(SS), 1997 WL 659100, at *6 (S.D.N.Y. Oct. 22, 1997); *Powell v. Cook County Jail*, 814 F. Supp. 757, 758 (N.D. Ill. 1993); *Hancock v. Washtenaw County Prosecutor's Office*, 548 F. Supp. 1255, 1256 (E.D. Mich. 1982). The Court finds no law, constitutional, statutory, or otherwise, that defines a parish jail or any unit or department therein to be a person with the capacity to sue or to be sued. A parish jail is, as this Court has previously described, "not an entity, but a building." *See Jones v. St. Tammany Parish Jail,* 4 F. Supp. 2d 606, 613 (E.D. La. 1998) (dismissing St. Tammany Parish Jail with prejudice); *Dale v. Bridges*, No. 96-3088, 1997 WL 810033, at *1 n.1 (N.D. Tex. Dec. 22, 1997) (Dallas County Jail is not a jural entity capable of being sued), aff'd, 154 F.3d 416 (5th Cir. 1998). Thus, the Terrebonne Parish Criminal Justice Complex and its medical unit are not proper defendants in this case.

Furthermore, a parish jail also lacks the capacity to sue or be sued under Louisiana law. Although Louisiana courts have not yet ruled on the precise issue of whether a parish jail is a juridical person that can sue or be sued, the Louisiana Supreme Court in *Roberts v. Sewerage and Water Bd. of New Orleans*, 634 So. 2d 341 (La. 1994), set forth a framework within which to determine an entity's juridical status. The Court in *Roberts* stated:

> [t]he important determination with respect to the juridical status or legal capacity of an entity is not its creator, nor its size, shape, or label. Rather the determination that must be made in each particular case is whether the entity can appropriately be regarded as an additional and separate government unit for the particular purpose at issue. In the absence of positive law to the contrary, a local government unit may be deemed to be a juridical person separate and distinct from other government entities, when the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity. 1 Sands & Libonati,

> § 2.18 and authorities cited therein, §§ 2.19, 2.20. Such a determination will depend on an analysis of specifically what the entity is legally empowered to do.

*Roberts,* 634 So. 2d at 346-47. In concluding that the Sewerage and Water Board was capable of being sued, the *Roberts* Court focused its analysis on the independent management, financing and operations of the Board. *See id.* at 352.

By contrast, in *City Council of Lafayette v. Bowen*, 649 So. 2d 611, 616 (La. Ct. App. 1994), *writ denied*, 650 So. 2d 244 (La. 1995), the Louisiana Third Circuit Court of Appeals held that under the *Roberts* analysis, the City Council of Lafayette had no capacity to sue or be sued. In so holding, the Court expressly found "no authority, constitutional, statutory, or via home rule charter" that authorized the Lafayette City Council to institute a law suits on its own motion. *Bowen*, 649 So. 2d at 613.

In this case, state law divides responsibility for parish jails. The parishes are charged with their jails' physical maintenance. *See* La. Rev. Stat. Ann. § 15:702 (2008). However, the duty to administer and operate the jails falls on the sheriff of each parish. *See* La. Rev. Stat. Ann. § 15:704 (2008). The office of sheriff is a constitutional one in Louisiana, existing separately from parish government. La. Const., Art. 5, § 27; *see also Langley v. City of Monroe*, 582 So. 2d 367, 368 (La. Ct. App. 1991) (holding that parish could not be liable for injuries attributed to sheriff). Under the *Roberts* framework, the Terrebonne Parish Criminal Justice Complex is not "legally empowered to do" anything independently of either Terrebonne Parish or the Terrebonne Parish Sheriff. *Roberts*, 634 So. 2d at 347. The jail is not a separate entity, but merely a shared branch or facility of these two greater entities.

For all of these reasons, the claims against the Terrebonne Parish Criminal Justice Complex and against the medical unit at the jail are frivolous and otherwise fail to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e) and § 1915A, and 42 U.S.C. § 1997e.

### C. Claims Against Terrebonne Parish Consolidated Government

Authement also lists Terrebonne Parish as a defendant, presumably because the incidents happened at the parish jail. For the following reasons, any claims against the Parish are frivolous and otherwise fail to state a claim for which relief can be granted.

Terrebonne Parish, as a local governing body, is a "person" within the meaning of § 1983 and therefore is subject to suit under that provision. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). However, a governmental body may not be held vicariously liable for the actions of its employees; rather, it can be liable only "when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible." *Monell*, 436 U.S. at 694. Further, the plaintiff must allege not merely that such an unconstitutional policy or custom exists, but that it was the proximate cause of his injury. *See Collins v. City of Harker Heights*, 503 U.S. 115, 122-24 (1992); *Berry v. McLemore*, 670 F.2d 30, 33-34 (5th Cir. 1982), *overruled on other grounds*, *Int'l Woodworkers of America v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986).

In the instant case, Authement has not alleged a legitimate basis for having named the Parish in his complaint. He has not identified a parish policy, practice, or custom which caused the damages he asserts in the manner contemplated *Monell*. Instead, his claims are based on specific actions or inactions by personnel at the prison. Consequently, the claims against Terrebonne Parish should be dismissed as frivolous and for failure to state a claim for which relief may be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### D. Claims Against Sheriff Bourgeois and Warden Lirette

Authement has also named Sheriff Bourgeois and Warden Lirette as defendants because they "run" the prison and should be responsible for the acts of the employees at the jail.[4] The claims against the Sheriff and Warden also are frivolous.

A supervisory official, like the Sheriff and the Warden, can not be held liable under § 1983 under a theory of *respondeat superior* simply because personnel at the prison allegedly violated the plaintiff's constitutional rights. *See Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). Rather, the Sheriff and Warden may only be liable under § 1983 if each of them was personally involved in the acts causing the deprivation of the plaintiff's constitutional rights or a causal connection existed between an act by the Sheriff or the Warden and the alleged constitutional violation. *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998) (citing *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976)); *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *Watson v. Interstate Fire & Cas. Co.*, 611 F.2d 120, 123 (5th Cir. 1980).

Authement does not allege that the Sheriff or the Warden were present for, or personally involved in, the search of his cell, the alleged invasion of his person, or his medical care. Authement also has not alleged that his injury was the result of any directive, supervised training or activity, or other policy set forth by the Sheriff or the Warden which would create vicarious liability. *See Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991); *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir.1992); *see also*, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988); *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996). Instead, Authement simply names the Sheriff and the Warden as the figureheads at the TPCJC. Thus, the Court finds that his claims against the Sheriff

---

[4]Authement also seeks relief against Warden Lirette for his negligence in failing to assure that he received medical care. This state law negligence claim is not being dismissed at this time.

and the Warden are frivolous and otherwise fail to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### E. Habeas Corpus Related Claims

As part of his request for relief, Authement seeks to have his current criminal charges dropped and to have his criminal record be expunged. This relief sounds in the law of habeas corpus. This civil rights proceeding is not appropriate for pursuing that type of relief. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Clarke v. Stalder*, 121 F.3d 222, 226 (5th Cir. 1997), *reh'g en banc granted and opin. vacated*, 133 F.3d 940 (5th Cir. 1997), *rev'd in part on other grounds and opin. reinstated in relevant part*, 154 F.3d 186, 187 (5th Cir. 1998) (*en banc*); *Hernandez v. Spencer*, 780 F.2d 504, 504 (5th Cir. 1986). Authement should pursue any such relief in a properly filed state criminal motion, post-conviction application, or federal habeas corpus proceeding, if appropriate.

## IV. Recommendation

It is therefore **RECOMMENDED** that Authement's § 1983 claims and state law claims, if any, against the State of Louisiana be **DISMISSED WITHOUT PREJUDICE** as frivolous, for failure to state a claim for which relief can be granted, and/or for seeking relief against an immune defendant pursuant to § 1915(e)(2), § 1915A, and §1997e, because the claims are barred by the Eleventh Amendment.

It is further **RECOMMENDED** that Authement's § 1983 claims and state law claims, if any, against the Terrebonne Parish Criminal Justice Complex and the medical unit at the Terrebonne Parish Criminal Justice Complex be **DISMISSED WITH PREJUDICE** as frivolous and/or for failure to state a claim for which relief can be granted pursuant to § 1915(e)(2), § 1915A, and §1997e.

It is further **RECOMMENDED** that Authement's § 1983 claims against the Terrebonne Parish Consolidated Government, Terrebonne Parish Sheriff L. Vernon Bourgeois, Jr., and Warden LeeRoy Lirette, be **DISMISSED WITH PREJUDICE** as frivolous and/or for failure to state a claim for which relief can be granted pursuant to § 1915(e)(2), § 1915A, and §1997e.

It is further **RECOMMENDED** that Authement's state law negligence claims against Warden Lirette for failure to provide him with medical care and the § 1983 claims against Corporal Matthew Jaccuzzo arising from this incident be allowed to proceed forward and remain referred to the undersigned for further proceedings.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).[5]

New Orleans, Louisiana, this 18th day of March, 2010.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[5]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.