UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TERRY PETER AUTHEMENT, JR.** | CIVIL ACTION |
| VERSUS | NO. 09-4618 |
| PARISH OF TERREBONNE, STATE OF LOUISIANA, SHERIFF OF TERREBONNE PARISH, TPCJC, MEDICAL DEPARTMENT IN TPCJC, CPRL. MATTHEW JACCUZZO, WARDEN LEE ROY LIRETTE JR. | UNITED STATES MAGISTRATE JUDGE KAREN WELLS ROBY |

## ORDER AND REASONS

This matter is before the Court upon consent of the parties pursuant to 28 U.S.C. § 636(c).[1] The plaintiff, Terry Authement ("Authement"), filed a **Motion for Summary Judgment (Rec. Doc. No. 42)** seeking summary judgment pursuant to 42 U.S.C. § 1983 finding that the defendants violated his constitutional rights against deliberate indifference to his medical needs. On September 14, 2009, the Court conducted a hearing pursuant to *Spears v. McCotter*,[2] and its progeny, with the plaintiff and counsel for the Terrebonne Parish defendants participating by conference telephone

---

[1] Rec. Doc. Nos. 35, 37.

[2] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure. *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

call.[3]  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

## I. Factual Summary

### A. The Complaint

Authement is a prisoner housed in the Allen Correctional Center in Kinder, Louisiana. Authement filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. §1983 against the Terrebonne Parish Consolidated Government, the State of Louisiana, Terrebonne Parish Sheriff L. Vernon Bourgeois, Jr., the Terrebonne Parish Criminal Justice Complex ("TPCJC"), the TPCJC medical department, Corporal Matthew Jaccuzzo, and Warden LeeRoy Lirette.

Authement alleges that on June 19, 2009, he placed paper over the windows in his cell. He claims that Corporal Matthew Jaccuzzo and another officer entered the dormitory. Jaccuzzo grabbed his shirt and held him against the wall under the stairs. He alleges that the corporal "put his fingers in my ass" while the other officer searched his cell. He claims that he filed a complaint with the medical staff about the incident every night for a week, but he was never examined. He states that on June 30, 2009, he showed bloody tissue to Nurse Monique and an officer named "Big Country," and he was still never checked.

He further alleges that, on June 20, 2009, Corporal Jaccuzzo threatened to kill him if he told anyone what happened. He claims that Jaccuzzo also wrote a disciplinary report against him in retaliation for reporting the incident. Authement claims that he fears for his life.

As relief, he seeks $75 million in damages. He also requests that Jaccuzzo be fired and charges filed against him for sexual assault. He also seeks to have the Warden and the medical staff

---

[3]Rec. Doc. No. 17. The plaintiff was sworn prior to testifying. The hearing was digitally recorded.

fired and charged with neglect for failing to have him checked after the sexual assault. He also seeks to have the charges against him dropped and his criminal record expunged.

### B.     The *Spears* Hearing

Authement testified that he was a pretrial detainee at the time of the hearing awaiting disposition of charges as a felon in possession of a firearm. He also stated that he was on suicide watch in a lockdown cell at the TPCJC on May 19, 2009. Because of this, he was wearing a padded blue coverall with velcro. He explained that he was in lockdown after he flooded his cell. While there, he was later placed on suicide watch because he wrote a note and placed a noose around his neck. He stated that he has a history of Touret Syndrome, ADD, ADHD, and paranoid schizophrenia. He was first diagnosed with paranoid schizophrenia in 2005 while incarcerated in the Elayn Hunt Correctional Center ("Hunt"). He was not on medication for schizophrenia at the time of the suicide attempt or the underlying incident.

He testified that he had not had medication for his mental disorders for years. At Hunt, he was given Haldol. In 2006 and 2007, he also received Vistral from the doctors at River Correctional Center. Prior to this arrest, he was not seeing a doctor for schizophrenia, although he was in the process of getting appointments set up.

At TPCJC, he did not see Dr. Lowe, a psychiatrist, until after he wrote the suicide note, which was a couple of days after the incident with Deputy Jaccuzzo in June of 2009. He placed him on Thorozine, an anti-psychotic medication, to calm him down. He saw him one other time in August, when he took Authement off of the Thorozine. Authement stated that he did not like the effects of Thorozine so, after the first few days, he refused to take it anyway. At the time of the hearing, he anticipated another follow-up appointment with Dr. Lowe. He also explained that

without medication, he has rare episodes. He complains that he hears things that are not there and sees animals that are not there.

He further testified that, on May 19, 2009, while on suicide watch in lockdown, he was dissatisfied with his ability to get medical attention for his dislocated shoulder. He had a history of his shoulder problems because of damage to his rotator cuff. To get attention, he put paper over the windows. He stated that Deputy Jaccuzzo and one other deputy came to the cell.

Deputy Jaccuzzo pulled him up off his bunk, which caused the velcro on his suit to come open. The velcro scratched his shoulder blade. Jaccuzzo told the other deputy to remove all paper from the cell. In the meantime, Jaccuzzo pulled Authement underneath the stairs and shoved him into the wall. While there, he testified, Jaccuzzo put at least one of his fingers in Authement's anus and then pulled his finger up and then out causing him injury. Jaccuzzo reportedly told him that he would get the same treatment every time he caused trouble.

Authement stated that he bled for a while and that he tried to get medical care. He even showed blood on a tissue to a nurse and another deputy. He wrote a complaint about why he had not been treated for the sexual assault. He recalled that he received a response stating that the medical department did not get involved in criminal allegations and that his medical requests have been honored.

Authement also stated that, the day after he filed a grievance about Deputy Jaccuzzo, he received a disciplinary write up for papering the window and for blocking a security device. He refused to accept the written report because most of the allegations from Jaccuzzo were untrue, for example he failed to mention that there was another deputy present. Authement stated that he

entered a plea of guilty to papering over the window, and he was released from lockdown several days later.

He also testified that he sued Warden Lirette because he ran the jail and made decisions on how matters at the jail should operate. He also complained that he failed to assure that the jail ran properly. He further alleged that the Warden failed to investigate his grievance about Jaccuzzo, which was denied, because there was no evidence to further pursue the matter. He stated that about two days after the incident, a detective took his statements, and he heard nothing else about the matter. He also testified that he sued the Sheriff of Terrebonne Parish because he is responsible for all of the employees at the jail, including the Warden.

On March 19, 2010, the undersigned issued a report recommending that Authement's § 1983 and state law claims against the State of Louisiana be dismissed without prejudice, that his § 1983 and state law claims against TPCJC and TPCJC medical unit be dismissed with prejudice, and that his §1983 and state law claims against the Terrebonne Parish Consolidated Government, Terrebonne Parish Sheriff L. Vernon Bourgeois, Jr., and Warden LeeRoy Lirette be dismissed with prejudice.[4] The Court also recommended that the state law negligence claims against Warden Lirette for failure to provide him with medical care and the §1983 claim against Corporal Matthew Jaccuzzo be allowed to proceed. On May 10, 2010, the district judge adopted the report and recommendations and entered an order accordingly. The remaining issues are presently set for non-jury trial on November 8, 2010.

---

[4]Rec. Doc. No. 26.

Authement has filed the subject motion seeking a determination that Warden Lirette negligently failed to provide him with medical care.[5] Authement does not make clear in his motion whether he intended to pursue any summary relief against Corporal Jaccuzzo.

The defendants oppose the motion arguing that Authement's motion demonstrates issues of material fact which preclude summary judgment and which should be left for trial.[6]

## II. Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Fields v. City of Southern Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). The Court's task is not to resolve disputed issues of fact, but to determine whether there exists any factual issues to be tried. *See Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party. *Id.*, at 248.

The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the moving party carries its burden of proving that there is no material factual dispute, the burden shifts to the nonmovant "to show that summary judgment should not lie." *Hopper v. Frank*, 16 F.3d 92, 96 (5th Cir. 1994). While the court must consider the evidence with all reasonable inferences in the

---

[5]Rec. Doc. No. 42.

[6]Rec. Doc. No. 45.

light most favorable to the nonmovant, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.  *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts."  *Id.*

Instead, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue of fact for trial." *Celotex Corp*, 477 U.S. at 324.  If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.  *See Szabo v. Errisson*, 68 F.3d 940, 942 (5th Cir. 1995); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994).

**III.    Analysis**

Authement filed the subject motion seeking a determination that the defendant Lirette negligently failed to provide him with medical care in violation of state law.  In support of his motion, he attached documentation from the prison grievance proceedings regarding the provision of medical treatment.  The administrative responses to his complaint state that the prison medical department did not get involved in criminal accusations and that all of Authement's requests for medical care had been honored to date.[7]

According to Authement, these documents, signed during the administrative review of his claims against Jaccuzzo constitute a confession or evidence that the prison refused to provide him with medical treatment related to Jaccuzzo's actions.

---

[7]Rec. Doc. No. 42, p. 4, responses dated 08/14/2009 and 09/15/2009.

To the contrary, the document presented by Authement suggest that the prison medical department honored each of his requests for medical care. In the opposition, the defendants do not specifically address the precise nature of the medical care provided, but they do argue that no medical care was required since Corporal Jaccuzzo did not harm the plaintiff. Nonetheless, the Court finds that there are material questions of fact surrounding the issues remaining before the Court which prevent the grant of summary judgment. Accordingly,

**IT IS ORDERED** that Authement's **Motion for Summary Judgment (Rec. Doc. No. 42)** is **DENIED**.

New Orleans, Louisiana, this 1st day of November, 2010.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**